## TRIPPLEHORN v. LADD–HANNON OIL CORPORATION.   (No. 425.)

Court of Civil Appeals of Texas. Eastland.
April 27, 1928.

Rehearing Denied June 22, 1928.

**1. Mines and minerals ☞74—Assignment of oil and gas lease cannot be canceled for failure of consideration.**

Mere failure by grantee to perform promise which forms whole or part of consideration inducing assignment of oil and gas lease gives rise to no right of rescission in grantor, either at law or in equity.

**2. Evidence ☞444(1)—After absolute delivery of assignment of oil lease, parol evidence is inadmissible to show it was not to take effect till happening of future event not expressed therein.**

Where undisputed evidence shows absolute delivery of assignment of oil and gas lease, complete in its terms and regular on its face, parol evidence is not admissible to show that assignment was not to take effect until happening of some future event not expressed in assignment.

**3. Evidence ☞444(1)—Parol evidence is inadmissible to ingraft condition subsequent on deed.**

Parol evidence is inadmissible to ingraft condition subsequent on deed complete on face and unambiguous.

**4. Appeal and error ☞930(3)—In suit to cancel oil lease, plaintiff is deemed to have waived issue of fraud, unless he requests finding thereon or objects to omission to present issue to jury (Rev. St. 1925, art. 2190).**

In action to cancel assignment of oil lease, plaintiff, having presented issue of fraud, will, under Rev. St. 1925, art. 2190, be deemed to have waived it, unless he requests finding thereon or objects to court's omission to present it to jury, since it was not duty of defendant to see that court submitted issue vital to plaintiff's right of recovery.

**5. Constitutional law ☞311—Fraud ☞12—Statute making promises inducing contract not performed within reasonable time presumptively fraudulent held violative of due process clause (Rev. St. 1925, art. 4004).**

That part of Rev. St. 1925, art. 4004, which provides that promises to do future acts, made as material inducement to enter into contract not performed within reasonable time, shall be presumed to have been falsely or fraudulently made, is violative of due process clause of Bill of Rights, and therefore unconstitutional.

**6. Mines and minerals ☞74—Delivery of assignment of oil lease held complete, in view of assignor's letter acknowledging unconditional delivery.**

Delivery of assignment of oil and gas lease *held* complete, where assignor expressly acknowledged in letter unconditional delivery of assignment, since to complete delivery instrument must be placed within control of grantee by grantor with intent that it should become operative.

On Motion for Rehearing.

**7. Appeal and error ☞747(2)—Appellee, before reviewing court without cross-assignment of error relating to fraud, held to have waived such issue.**

Appellees *held* to have waived issue relating to fraud, where supplemental brief and argument practically amounted to concession that appellee was before reviewing court without cross-assignment of error, relating to that question.

Appeal from District Court, Shackelford County; W. R. Chapman, Judge.

Action by the Ladd-Hannon Oil Corporation against D. W. Tripplehorn. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

James G. Harrell and G. O. Bateman, both of Breckenridge, for appellant.

W. R. Ely, of Abilene, W. L. Morris and Ike A. Wynn, both of Fort Worth, and Scott, Brelsford & McCarty & Brelsford, of Eastland, for appellee.

LESLIE, J. The appellee, Ladd-Hannon Oil Coporation, the owner of an oil and gas lease, sued the appellant, D. W. Tripplehorn, to cancel the assignment of a 240-acre tract thereof, made by it to said Tripplehorn. Three days prior to the filing of the suit Tripplehorn transferred all his rights in the 240-acre assignment to one G. E. Hooker, who by amended petition was made party defendant. Hooker appeared and answered; later he reassigned to Tripplehorn the interest acquired by virtue of said transfer, and subsequent to such reassignment he disclaimed any interest in the subject-matter of the suit which proceeded as between appellee and Tripplehorn.

The petition was in form of trespass to try title, and in the second count it was alleged that in April, 1925, the appellee was the owner of an oil and gas lease covering lands in Schackelford county, Tex., upon which it desired to have a well drilled for the purpose of testing its oil and gas possibilities; that it executed and delivered an assignment of the lease to the extent of 240 acres to D. W. Tripplehorn, appellant, *in consideration of his promise to begin the drilling of a well on some part of said acreage on or before June 15, 1925*, and to continue drilling thereof with due diligence to a depth necessary to test said land; that the promises of appellant had not been performed, and that such promises constituted *the sole consideration of said assignment, and that the consideration failed;* that the said promises were fraudulently made, with no intention, at the time they were made, of carrying them out; and that the appellee had suffered irreparable injury.

Among other defenses, appellant alleged there was a valuable consideration for the

lease assignment; that no time limit was set for the beginning of a well; that, if such limit was set, the appellee breached its contract to deliver an additional 80 acres, thereby waiving the covenant, if any, to begin the drilling on or before June 15, 1925; and, further, that this suit prevented appellee from beginning operations. A detailed statement of the testimony will be omitted, but portions thereof essential to an understanding of the issues presented will appear throughout the opinion.

Counsel for appellant has filed herein a logical and well-reasoned brief upon the controlling propositions presented by this appeal. With unimportant omissions and slight rearrangements of parts, it will in the main be adopted as the opinion of the court:

### "Appellant's First Proposition.

[1] "The mere failure by a grantee to perform a promise which formed the whole or part of the consideration inducing an executed conveyance gives rise to no right of rescission in the grantor, either at law or in equity.

"The conveyance of the oil and gas lease in this case was by regular assignment, for a recited consideration of one dollar and other valuable consideration, without any condition expressed therein, and with covenants of general warranty. The consideration for said assignment as pleaded by the plaintiff (appellee) was that the defendant (appellant) would begin the drilling of a well for oil and gas on some part of the tract conveyed on or before June 15, 1925, and continue the drilling thereof with diligence to the depth necessary to properly develop said land for oil and gas. The sole issue submitted to the jury was as follows: 'Did the defendant, Tripplehorn, agree to begin the drilling of a well by June 15, 1925, in consideration of the assignment made to him by the plaintiff, covering two hundred and forty acres? Answer "Yes" or "No."' To which special issue the jury answered, 'Yes.' Upon this verdict the court entered a judgment canceling and rescinding the assignment and removing same as a cloud upon the title of said land. It will thus be seen that the court canceled and rescinded an absolute deed for the failure of the grantee to perform a promise, oral and not expressed in the deed, to begin the drilling of a well before a certain date, which promise the jury found to be the consideration for said deed.

"The general rule for such cases is laid down by Mr. Pomeroy in Pomeroy's Equity Jurisprudence, vol. 5, p. 4755, par. 2108, as follows: 'It is, of course, the general rule that the mere failure of the grantee to perform a promise, which formed the whole or part of the consideration inducing an executed conveyance gives rise to no right of rescission in the grantor, either at law or in equity, unless such promise amounts to a condition; and it is a rule of construction that, in case the language or intention is doubtful, the promise or obligation of the grantee will be construed to be a covenant, limiting the grantor to action thereon, and not a condition subsequent, with the right to defeat the conveyance.' The rule was early adopted by the Supreme Court of Texas, and has continued to be the rule down to the present.

"In the case of Chicago, T. & M. R. Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39, the facts were that Titterington conveyed a right of way to the railway company by a deed containing the following: 'That, for and in consideration of the enhanced value to be given and is contemplated to arise to our lands and other property by the location and construction of the Chicago, Texas & Mexican Central Railway Company, and for the consideration of full and complete value accruing to us by this transaction, in locating and maintaining a station on the lands hereby granted, we.' etc.

"Upon the failure of the railway company to build and maintain the station, Titterington brought suit to cancel the deed, and, discussing the case, the court said: 'Of course, in case of a condition subsequent broken, the grantor has his election to re-enter and reclaim the land or to sue for damages for a breach of the contract, and a suit for the land would be equivalent to a re-entry. Railway Co. v. Dunman, [74 Tex. 265, 11 S. W. 1094], supra. But conditions of this character are not favored by the courts, and in case of doubtful language or intention the promise or obligation of the grantee will be construed to be a covenant limiting the grantor to an action thereon, and not a condition subsequent with the right to defeat the conveyance. Under the authorities, we think that it must be held, and we do hold, that the promises or obligations of the railway company referred to in the deed are in the nature of covenants, not conditions, and therefore the plaintiffs, aside from the other questions in the case, could not reclaim the land itself on account of the nonperformance of the covenants or promises by the grantee, but would be required to sue for the damages arising from the breach of the contract.'

"This case has been cited repeatedly by the courts of this state as correctly stating the law in cases such as this one. In the Titterington Case the promise was incorporated in the deed, while in this case it must be proved by parol, and there can be no more reason for canceling a deed, absolute on its face, for the failure to perform a promise constituting the consideration where such promise must be proved by parol testimony, than there would be for canceling such a deed where the promise is stated in the deed.

"In the case of Chambers v. Wyatt (Tex. Civ. App.) 151 S. W. 864, an aged negro, Catherine Williams, conveyed two lots to Chambers, and after the death of Catherine Williams the administrator of her estate sued Chambers to set aside this conveyance on the ground of failure of consideration. The court in discussing the case said: 'In the paragraph of the court's charge above referred to, the court proceeded upon the theory, and the jury were, in effect, charged, that mere failure upon the part of Chambers to comply with the promises made by him, and in consideration of which the deed was executed, was sufficient to authorize a cancellation of the deed and recovery of the premises. The deed, however, was absolute upon its face, and such agreements were covenants only upon the part of Chambers, and his failure to perform the same would not alone authorize the cancellation of the deed and recovery of the premises. Odom v. Odom [Tex. Civ. App.] 139 S. W. 900; Mayer v. Swift, 73 Tex. 369, 11 S. W. 378; Byars v. Byars, 11 Tex. Civ. App. 565, 32 S. W.

925; Selari v. Selari [Tex. Civ. App.] 124 S. W. 997; Rainey v. Chambers, 56 Tex. 17; Beaumont Carriage Co. v. Price [Tex. Civ. App.] 104 S. W. 499.'

"The deed in this case was an absolute conveyance on its face, containing no promises or conditions of any kind, and recited a valuable consideration in hand paid. The same was executed and delivered to appellant by the appellee's president and general manager. That it was in the exact form desired by appellee is evidenced by the fact that its president, L. D. Ladd, drew an assignment first on April 10, 1925, which first draft for some reason was not properly executed, and he drew it a second time and delivered it to appellant some two weeks after the trade had been made. In his letter of April 25, 1925, transmitting the assignment to appellant, he says: 'It is very unusual to deliver an assignment before the well is spudded in, but I have confidence in you and know that you are going to drill, and for that reason I am inclosing assignment to 240 acres,' etc. That it was an executed and unconditional conveyance, and passed title to the land is beyond question.

"The Supreme Court case of Paris Grocer Co. v. Burks, 101 Tex. 106, 105 S. W. 174, in discussing such a deed, says: 'Her deed upon its face was an unconditional conveyance and passed the title to the land. Whatever may be the nature sought to be ascribed to the claim asserted under the parol evidence, it is in truth an attempt to ingraft upon the deed a parol condition. That this cannot be done we understand the authorities to hold uniformly. In connection with allegations of fraud, accident, or mistake, such a stipulation and its nonperformance may be employed in equity as the basis for a cancellation; but the bare effort to use it as in itself furnishing a ground for defeating or qualifying the deed is opposed to the well-settled rule that such instruments cannot be added to by parol. This cannot be evaded by calling the promise the consideration of the deed and invoking the rule, often laid down, that a consideration different from or in addition to that expressed may be shown. This may be done when such evidence has some legitimate purpose to accomplish in the case, such as to enforce a vendor's lien or a trust, or to show that a conveyance apparently without consideration was really upon a valuable one; but such evidence may not be used to defeat the deed as a conveyance.'

"That this same rule applies to oil and gas leases is shown by the case of Panhandle Refining Co. v. Swope (Tex. Civ. App.) 241 S. W. 597, which was an action to cancel an oil and gas lease for the failure to drill a well in accordance with an oral promise made at the time the lease was made: 'First, it is urged that appellant's general demurrer to appellees' petition should have been sustained: First, because the action to cancel the lease is predicated upon the promise of their grantee, Norton, contemporaneous with the writing to drill a well within a year, a promise to perform in the future, with no allegation that it was made with no intention at the time to perform it, with the fraudulent design to induce the appellee by such promise to execute the writing. The rule is that equity will not cancel contracts for failure of a party to fulfill a promise therein, to perform some act in the future. Railway Co. v.

Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; Moore v. Cross, 87 Tex. 557, 29 S. W. 1051.'

"The court by refusing to give appellee's requested charges on the question of fraud must have found that appellee failed to make out a case on its allegation of fraud in the procurement of the assignment. The sole question, therefore, to be determined by this court is, Can an absolute deed be canceled for failure of the consideration? * * *

#### "Appellant's Second Proposition.

[2] "The undisputed evidence showing an absolute delivery by appellee to appellant of an assignment of an oil and gas lease, complete in its terms and regular on its face, parol evidence is not admissible to show that the assignment was not to take effect until the happening of some future event not expressed in the assignment.

#### "Appellant's Third Proposition.

[3] "Parol evidence is inadmissible to ingraft upon a deed a condition subsequent complete upon its face and unambiguous in its terms.

"The assignment from appellee reads as follows: 'Whereas, on the 14th day of May, 1921, a certain oil and gas mining lease was made and entered into by and between W, Y. Davis and wife, R. A. Davis, of Shackelford county, Tex. lessors, and L. D. Ladd and E. F. Hannon, lessees, covering the following described land in the county of Shackelford and state of Texas, to wit: Sections 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 28, 29, and 30 in block 12, and S. W. ¼ of section 7, block 12, Texas & Pacific Railway Company lands, containing 9,760 acres more or less, known as the Coates ranch— said lease being recorded in the office of the county clerk in and for said county in Book 67, p. 200; and whereas, the said lease and all rights thereunder or incident thereto are now owned by Ladd-Hannon Oil Corporation: Now, therefore, for and in consideration of one dollar (and other good and valuable consideration), the receipt of which is hereby acknowledged, the undersigned, the present owner of the said lease and all rights thereunder or incident thereto, does hereby bargain, sell, transfer, assign, and convey all rights, title, and interest of the original lessee and present owner in and to said lease and rights thereunder in so far as it covers the west one-half of the northeast quarter of section 13 and the east one-half of southwest quarter of section 13, block 12, of the above-described lease, together with all personal property used or obtained in connection therewith to D. W. Tripplehorn and his heirs and assigns. And for the same consideration, the undersigned for it, and its successors and representatives, does covenant with the said assignee, his heirs, or assigns, that Ladd-Hannon Oil Corporation, the lawful owner of the said lease and rights and interests thereunder and of the personal property thereon or used in connection therewith, that the undersigned has good right and authority to sell and convey the same, and that said rights, interest, and property are free and clear from all liens and incumbrances, and that all rentals and royalties due and payable thereunder have been duly paid, and that the undersigned will warrant and

defend the same against the lawful claims and demands of all persons whomsoever.

" 'In witness whereof, the undersigned owner and assignor has signed and sealed this instrument this 10th day of April, 1925. Ladd-Hannon Oil Corporation [Seal]. By L. D. Ladd, President [Seal].

" 'Attest: V. J. Hannon, Secy. [Seal.]'

"This assignment was mailed in Fort Worth, Tex., by appellee, addressed to appellant at Breckenridge, Tex., and was received by appellant. The letter accompanying said assignment, which was also received by appellant, was as follows:

" 'April 25, 1925.

" 'Mr. D. W. Tripplehorn, 'P. O. Box 1507, Breckenridge, Tex.—Dear Sir: I have your telegram of this morning asking for assignment. It is very unusual to deliver an assignment before the well is spudded in, but I have confidence in you and believe in you, and know that you are going to drill a well, and for that reason I am inclosing assignment to 240 acres, and I want you to know that I am always willing to help you in any way that I can while this well is drilling, and I don't want to see you lose any money. * * * I would rather see you make some.

" 'Will be over the first of the week and hope that you will move in immediately and get things started, as I feel sure that you are going to get a well.

" 'With kindest regards and best wishes, I am,

" 'Very truly yours,        L. D. Ladd.'

"Appellant's bill of exception No. 1, omitting its formal parts, is as follows:

" 'While L. D. Ladd was on the witness stand testifying on direct examination as a witness for plaintiff the following evidence was given:

" 'Q. Going back to the time when Mr. Tripplehorn was in your office and at the time on which I believe you stated you delivered to him a copy of the assignment which is shown by the record is signed by you, but not acknowledged, will you explain what was said in connection with the delivery of this copy. A. He was not to put it of record until he spudded in the well.

" 'Q. Did you or not intend that the copy delivered should become effective? A. No, sir; I did not.

"Q. Was anything said about when the lease or assignment was to become effective? A. When the well was spudded in.

" 'Q. What was to be the result if he did not spud? A. If he did not spud in the well by June 15th—

" 'Q. What was to be the result; what was to be done in the event he did not spud in the well? A. He was to return the assignment to me if he did not spud in by the 15th of June.

" 'Q. When was the assignment to become effective? A. When he spudded in the well.

" 'The defendant's counsel objected to the above and foregoing questions and answers at the time said questions were asked and the answers given, because plaintiff was attempting by parol testimony to establish a condition subsequent or a forfeiture of a deed.'

"The question of law raised by the above propositions is elementary. While a different rule may be applied under the Law Merchant of negotiable instruments, and a conditional delivery of a note might be established by parol evidence, yet the security of land title demands

a strict adherence to the rule when the title to real estate is involved.

"The general rule as stated in 1 Devlin on Deeds, p. 553, § 314, is as follows: 'A deed cannot be delivered to a grantee as an escrow. If it be delivered to him, it becomes an operative deed, freed from any condition not expressed in the deed itself and it will vest the title in him, though this may not have been contemplated when the delivery was made and may be contrary to the intention of the parties. One of the grounds upon which this rule is based is that parol evidence is inadmissible to show that the deed was to take effect upon condition. A deed can only be delivered as an escrow to a third person. If it be intended that it shall not take effect until some subsequent condition shall be performed or some subsequent event shall happen, such condition must be inserted in the deed itself. * * * Whether a deed when delivered shall take effect absolutely or only upon the performance of some condition not expressed therein cannot be determined by parol evidence.'

"And again in volume 2, p. 1826, § 976, it is stated: 'It is certain that, in an action to recover property conveyed by deed on the ground that a condition on which it was made has not been performed, the deed must speak for itself, and a condition cannot be ingrafted upon a deed absolute in form by parol evidence.'

"The first paragraph of the syllabus in the case of G., H. & S. A. Ry. Co. v. Pfeuffer & Ireland, 56 Tex. 66, which is supported by the text of the opinion, states the rule in this language: 'Parol evidence will not be heard to defeat a right to land conveyed by deed when its object is to establish a condition subsequent.'

"Chief Justice Stayton's statement of the rule in the case of Heffron v. Cunningham et al., 76 Tex. 312, 13 S. W. 259, is in this language: 'The deed was delivered to appellant, and there can be no claim that he held it as an escrow, to take effect on condition not expressed in its face, as might have been shown to be the case, had it been delivered to a stranger. Having been delivered to appellant, the grantee, it became an absolute conveyance, on which could not be ingrafted, by parol evidence, any condition inconsistent with its terms.'

"A clear statement of the reasons for the rule is contained in the opinion in the case of Lambert et al. v. McClure, 12 Tex. Civ. App. 577, 34 S. W. 973: 'The first assignment of error is not well taken. Any verbal agreement made by Mrs. McClure at the time and prior to the execution of the deed could not be considered. If there were no conditions expressed in the deed when it was delivered to one of the grantees, it was an absolute delivery, whatever oral conditions may have been agreed to by the grantee in regard to it. * * * If it should be a desire of a grantor that his deed should not take effect until some condition is performed, he should keep the deed himself, or leave it with some third person, a stranger to the transaction. If he delivers the deed to the grantee, it goes into effect at once, regardless of the performance of any condition not expressed in the deed, and testimony as to any such condition would not be admissible.'

"Many authorities from different states are here cited in support of the rule. In the case of Holt v. Gordon, 107 Tex. 137, 174 S. W. 1097,

the Supreme Court, through Justice Phillips, in answering a certified question from the Court of Civil Appeals at Fort Worth involving the very rule quoted in the above propositions, uses this language: 'It is our opinion that the Court of Civil Appeals correctly ruled the evidence to be inadmissible. It may be shown by parol testimony that an ordinary written instrument was executed under an agreement that it was not to become effective except upon certain condition. * * * But that principle has never been recognized by this court as applicable to a deed to land, or a deed of trust affecting the land, where the delivery of the instrument was made to the grantee, and not to a third person.' "

[4] In its brief the appellee devotes considerable attention to the issue of fraud suggested by its pleadings, and it apparently labors under the impression that such issue was resolved by the court in its favor and that the judgment securely rests on such finding. The appellee specifically calls this court's attention to that portion of the record showing that it requested of the trial court the submission to the jury of the fraud issue in its various aspects, but in that same connection it admits that the trial court refused to submit the issue. Upon this phase of the trial the appellee in its brief makes the observation:

"The honorable court refused appellee's requested instruction because he believed the only material issue was covered by the question submitted. * * * Such special instructions were requested by the appellee at the trial of this cause and refused by the court, and the appellant not only did not request the instructions as provided by the statutes, but took no exceptions whatever to the court's refusal to give such instructions at the request of appellee. So the issues referred to were determined in favor of appellee by the honorable trial court and the appellant cannot complain."

This contention of the appellee cannot be sustained. The law is quite to the contrary. As thus disposed of the issue of fraud was not only not determined in favor of the appellee, but it must be held that the appellee waived the issue altogether. The appellee misapprehends the meaning of article 2190, R. S., and possibly overlooks the construction given it in the opinions of the courts. The appellant was under no duty or obligation to see that the court submitted an issue vital to the appellee's right of recovery, and it is uniformly held that a party presenting an issue will be deemed to have waived the same, unless he requests a finding thereon, or objects to the court's omission to present the same to the jury for their consideration and properly preserves the point. Southwest National Bank of Dallas v. Hill (Tex. Civ. App.) 297 S. W. 1096 (writ of error refused) ; Ratliffe v. Ormsby (Tex. Civ. App.) 298 S. W. 930; Id. (Tex. Sup.) 1 S.W.(2d) 1084; Bulin et al. v. Smith (Tex. Com. App.) 1 S.W.(2d) 591.

Further, the record before us discloses no exception to the trial court's action in "refusing appellee's requested instructions" upon the issue of fraud, and, in addition, the appellee is in this court without any cross-assignments of error based on any ruling of the court pertaining to that issue. Hence the question of fraud is wholly out of the case.

[5] Looking to the court's judgment and taking the verdict of the jury as the sole basis therefor upon the only issue submitted, we are of the opinion that the trial court's judgment rests exclusively upon the theory of a failure of consideration. But, if it be contended, as it appears to be upon the part of the appellee, that the findings of the jury upon that special issue constituted a sufficient finding to make out a case of fraud under article 4004 of the Revised Statutes upon the theory that the burden was upon the appellant, Tripplehorn, to show his good faith in the transaction, then it must be observed that such a theory or contention is without foundation in law, since in Clem v. Evans, 291 S. W. 871, 51 A. L. R. 1135, in an opinion by the Commission of Appeals it has been held that that part of article 4004 which provides that promises to do future acts, made as a material inducement to enter into a contract not performed within a reasonable time, shall be presumed to have been falsely or fraudulently made, was violative of the due process clause of the Bill of Rights, and therefore unconstitutional.

[6] As before stated, the assignment sought to be canceled recited a consideration of $1 and other good and valuable consideration and contained no conditions, reservations, or limitations. No question is made, nor can any be made upon the point of delivery of the assignment, for L. D. Ladd, on behalf of the appellee, in his letter of April 25, 1925, expressly acknowledged an unconditional delivery of the assignment and remarked that it was "very unusual" to do so under such circumstances generally. This act upon the appellee's part met all the requirements of the law in the respect mentioned, for, as stated by Judge Gaines in Steffian v. Bank, 69 Tex. 518, 6 S. W. 824:

"To complete a delivery in its legal sense, two elements are also essential: The instrument must not only be placed within the control of the grantee, but this must be done by the grantor with the intention that it shall become operative as a conveyance."

See, also, Coleman et al. v. Easton (Tex. Com. App.) 249 S. W. 200.

The judgment of the trial court cannot be sustained upon any of the grounds advanced by the appellee. The appellant's assignments herein discussed must be sustained. The case has been fully developed upon the theory upon which the appellee elected to prosecute it.

The judgment of the trial court will therefore be reversed, and judgment here rendered

in favor of appellant, Tripplehorn. It is so ordered.

HICKMAN, C. J., disqualified, and not sitting

### On Motion for Rehearing.

LESLIE, J. Appellee has filed herein a very comprehensive motion for rehearing, in which our conclusions in the original opinion are attacked by various assignments of error. These assignments naturally fall into three groups: (1) Those that complain of the action of this court in holding that a deed or written instrument such as we have in this case cannot be canceled for a failure of consideration; (2) those that complain of the action of this court in holding that a deed cannot be executed and delivered to the grantee, to take effect upon a condition precedent; and (3) those that complain of the action of the court in holding that the question of fraud is wholly out of this case, and that, therefore, judgment should here be rendered for appellant.

We believe each group of assignments is sufficiently answered by the opinion heretofore rendered in this cause, and no extended discussion will be made of the assignments. However, we desire to make a few observations relative to the third group of assignments.

A careful review of this record and the assignments of error presented in this motion for rehearing confirms in us the conviction that in our original opinion we are correct in holding that the question of fraud is not before us in this case and that the plain mandate of the law is that this court should reverse and render this case as was originally done.

[7] Appellee, in its supplemental brief and argument filed in this court after the submission thereof, but before the original opinion of this court was delivered, stated:

"Appellees are not asking to reverse the cause, and after due consideration we are unable to see where cross-assignments of error made by appellee would have placed it in any better position before this honorable court."

This fixes the status of the appellee's contention in so far as the question of fraud is involved, and practically amounts to a concession that it is before this court without cross-assignments of error relating to that question, from which it follows that appellees have waived such an issue. There is nothing in the record to indicate remotely that the trial court by any action or ruling on its part misled the appellee in the pleading and development of its case, or that the court refused to permit it to fully develop its case. There is nothing in the record to indicate that the trial court by any ruling induced the appellee upon the trial of this case to forego any right or

remedy, either of law, equity, or fact to which it was entitled under its pleading and the testimony.

So viewing the record, we necessarily adhere to the conclusions expressed in our original opinion, and in futher support of that opinion, both on the question of fraud, as well as our duty to reverse and render, we cite the following authorities, which to us appear conclusive: Tarrant County v. Rogers, 104 Tex. 224, 135 S. W. 110, 136 S. W. 255; Sovereign Camp, W. O. W., v. Patton et al. (Tex. Sup.) 295 S. W. 913; Western Union Telegraph Co. v. Cates (Tex. Com. App.) 291 S. W. 193; Hume v. Carpenter, 188 S. W. 707 (Tex. Civ. App. writ refused); Rules 101 and 101a, 159 S. W. xi.

Appellee's motion for rehearing is overruled.